UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:23-CV-00457-GNS-CHL

KALEB RUSSELL                                                                                      PLAINTIFF

v.

BELLARMINE UNIVERSITY INCORPORATED                                      DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment (DN 25). The motion is ripe for adjudication.

**I.   BACKGROUND**

Plaintiff Kaleb Russell ("Russell") has Tourette Syndrome, which causes him to involuntarily say inappropriate words, including racial slurs. (Russell Dep. 13:21-23; 34:5-17, 74:17-23, Oct. 28, 2024, DN 25-1). As a coping strategy, Russell began to write these words instead of saying them. (Russell Dep. 36:13-37:22). During his first semester at Bellarmine University, Russell was disciplined for visiting a friend's dorm room past permitted hours, damaging a shoe rack, and writing a racial slur on a white board belonging to his friend's Black roommate. (Russell Dep. 13:21-23, 40:5-41:17, 45:6-14, 49:7-13, 83:8-14; Russell Dep. Ex. L, DN 28-2). As a result, Russell was banned from campus housing for a semester. (Russell Dep. Ex. L). Russell appealed the disciplinary decision, but while waiting on the outcome of his appeal, Russell decided to withdraw for the semester because he could not afford to live off-campus and

was concerned for his safety after social media posts labeled him a racist.[1]  (Russell Dep. 65:13-17, 79:22-80:2, 139:5-8, 165:16-166:6; Russell Dep. Ex. I, DN 28-2; Russell Dep. Ex. M, DN 28-2).  Russell contends he was denied adequate accommodations and student housing because Bellarmine refused to accommodate his disability in violation of Kentucky and federal law.  (Am. Compl. ¶¶ 60, 66, 77, DN 6).

Russell brought this action asserting three claims against Defendant Bellarmine University Incorporated ("Bellarmine"):  denial of public accommodation in violation of Kentucky Civil Rights Act ("KCRA"); violation of Title III of the Americans with Disabilities Act ("ADA"); and violation of Section 504 of the Rehabilitation Act ("RHA") of 1974.  (Am. Compl. ¶¶ 1-2, 53-80).  Following discovery, Bellarmine moved for summary judgment on all claims.  (Def.'s Mot. Summ. J., DN 25).

## II. JURISDICTION

Jurisdiction in this matter is based on federal question jurisdiction under 28 U.S.C. § 1331.  (Notice Removal 2-3, DN 1).  The Court has supplemental jurisdiction over the state-law claim pursuant to 28 U.S.C. § 1367.

## III. STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party moving for summary judgment may satisfy its burden [of] show[ing] that there are no genuine issues of material fact simply 'by pointing out to the court that the [non-moving party], having had sufficient opportunity for discovery, has no evidence to support an essential

---

[1] Russell's appeal of the student conduct hearing was stayed as a result of his decision to withdraw from Bellarmine.  (Russell Dep. Ex. O, DN 28-2).

element of his or her case . . . .'" *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)). Similarly, the movant may meet its burden by offering evidence negating an essential element of the non-moving party's claim. *See Dixon v. United States*, 178 F.3d 1294, 1999 WL 196498, at *3 (6th Cir. 1999).

After the movant either shows "that there is an absence of evidence to support the nonmoving party's case," or affirmatively negates an essential element of the non-moving party's claims, the non-moving party must identify admissible evidence that creates a dispute of fact for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). While the Court must view the evidence in a light most favorable to the non-moving party, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). "The mere existence of a scintilla of evidence in support of the [moving party's] position [is] [] insufficient; there must be evidence on which the jury could reasonably find for the [moving party]." *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

### A. ADA Claim

Before addressing the merits, the Court must decide whether Russell's claim under the ADA is moot. "A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012) (internal quotation marks omitted) (citation omitted).

Russell concedes that Title III of the ADA provides only for injunctive relief and seeks an injunction "directing [Bellarmine] to alter its policies in order to make it facilities accessible to and useable by [Russell] and other individuals who suffer from [Tourette Syndrome] to the full

3

extent required by [law]." (Am. Compl. ¶ 82(b); Pl.'s Resp. Def.'s Mot. Summ. J. 11 n.3, DN 28); *see* 42 U.S.C. § 12188(a)(1). Russell does not address Bellarmine's argument that the ADA claim is moot; he only states that he "seeks such relief to the extent available and otherwise relies on the [RHA] and the [KCRA] for damages." (Pl.'s Resp. Def.'s Mot. Summ. J. 11 n.3). "Where a [p]laintiff does not respond to [an] argument, . . . the Court will construe his silence as a concession." *McRae v. Louisville-Jefferson Cnty. Metro Gov't*, No. 3:19-CV-00313-GNS-CHL, 2022 WL 812380, at *5 (W.D. Ky. Mar. 16, 2022) (alterations in original) (internal quotation marks omitted) (citation omitted).[2] Accordingly, Russell's ADA claim is dismissed as moot.

---

[2] Moreover, Bellarmine has demonstrated that the ADA claim is moot. Bellarmine relies on *Fialka-Feldman v. Oakland University Board of Trustees*, 639 F.3d 711 (6th Cir. 2011), in which a student sued for access to student housing based on a theory of disability discrimination under the ADA and RHA. *Id.* at 713-14. The Sixth Circuit held:

> Once Fialka-Feldman completed his program at the University and once he signaled no intent to return, the injunction meant nothing to the University and required nothing of it. No one claims that the University must provide campus housing to non-students, which is what Fialka-Feldman has become. Any decision on appeal thus would not provide "meaningful relief" to either party.

*Id.* at 714 (citation omitted). Russell withdrew from Bellarmine in January 2023 and has since enrolled at Stevenson University in Maryland. (Pl.'s Resp. Def.'s Mot. Summ. J. 9; Russell Dep. 11:20-25). Russell has "signaled no intent to return" to Bellarmine, so even if he were granted relief and permitted to live in student housing with his requested accommodations, the injunction would mean "nothing to the University and require[] nothing of it." *Fialka-Feldman*, 639 F.3d at 714; *see Velzen v. Grand Valley State Univ.*, 902 F. Supp. 2d 1038, 1042-43 (W.D. Mich. 2012) (finding a small interest remains even if the student moved off campus because the student could reasonably expect the same denial of accommodations if she decided to move on campus again). Neither would the "capable of repetition yet evading review" exception apply here "because the exception requires not only that the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, but also that there was a reasonable expectation that the *same* complaining party would be subjected to the same action again." *Sandison v. Mich. High Sch. Athletic Ass'n, Inc.*, 64 F.3d 1026, 1029-30 (6th Cir. 1995) (internal quotation marks omitted) (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (per curiam)). Because Russell is not a student at Bellarmine and has no intention of returning or re-applying, no reasonable expectation exists that he will again be subject to the same action. *See id.*

4

B. **RHA Claim**

The RHA provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance," which includes universities. 29 U.S.C. § 794. "Given the statutes' similar requirements, courts generally evaluate ADA and [RHA] claims together." *Finley v. Huss*, 102 F.4th 789, 820 (6th Cir. 2024) (citation omitted). Thus, cases evaluating the ADA are instructive. *See id.*

To prevail on a claim of disability discrimination, Russell must show that he "is (1) disabled under the statute, (2) 'otherwise qualified' for participation in the program, and (3) being excluded from participation in, denied the benefits of, or subjected to discrimination under the program by reason of his or her disability." *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 453 (6th Cir. 2008) (citing *Maddox v. Univ. of Tenn.*, 62 F.3d 843, 846 (6th Cir. 1995)). Bellarmine and Russell both agree that he is disabled under the RHA, so no further analysis of the first element is necessary. (Def.'s Mot. Summ. J. 21; Pl.'s Resp. Def.'s Mot. Summ. J. 13).

Turning to the second element, "[a] disabled person is 'otherwise qualified' to participate in a program if [he] can meet its necessary requirements with reasonable accommodation." *Peters v. Univ. of Cincinnati Coll. of Med.*, No. 1:10-CV-906, 2012 WL 3878601, at *7 (S.D. Ohio Sep. 6, 2012) (citing *Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432, 435 (6th Cir. 1998)). To defeat Bellarmine's motion for summary judgment, Russell "need only show that an 'accommodation' seems reasonable on its face, *i.e.*, ordinarily or in the run of cases." *US Airways, Inc. v. Barnett*, 535 U.S. 391, 401-02 (2002) (citation omitted). An "[a]ccommodation is not reasonable if it either imposes 'undue financial and administrative burdens' on a grantee, or

5

requires 'a fundamental alteration in the nature of [the] program." *Sandison*, 64 F.3d at 1034 (alteration in original) (quoting *Sch. Bd. of Nassau Cnty. v. Arline*, 480 U.S. 273, 287 n.17 (1987)). "Courts are mindful of school administrators' educational expertise in reviewing the reasonableness of their selected accommodations." *Knox Cnty. v. M.Q.*, 62 F.4th 978, 1000 (6th Cir. 2023) (citation omitted). Schools are not required "to lower or to effect substantial modifications of standards to accommodate a handicapped person." *Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 413 (1979).

Bellarmine students must comply with its Code of Student Conduct, which prohibits "[c]onduct [which] is disorderly, obscene, lewd, in decedent, and objectively offensive. This includes, but is not limited to, physical, electronic or verbal misconduct." (Russell Dep. Ex. 3, at 38, DN 25-1). Bellarmine contends that Russell has failed to show that he was otherwise qualified to remain in student housing because his suggested accommodation of "retroactive leniency for his misconduct" is not reasonable. (Def.'s Mot. Summ. J. 21). Russell avers that he was otherwise qualified because "any accommodation of [his] [Tourette Syndrome] would have allowed him to continue living in student housing, including modified sanctions . . . ." (Pl.'s Resp. Def.'s Mot. Summ. J. 14).

To support his position that lessened sanctions would be a reasonable accommodation, Russell asserts that any "disciplinary sanction based on disability-related conduct is discriminatory." (Pl.'s Resp. Def.'s Mot. Summ. J. 21). Russell relies on cases from the Ninth and Tenth Circuit that concluded that "conduct resulting from a disability is considered to be part of the disability, rather than a separate basis for termination." *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1139-40 (9th Cir. 2001) (citation omitted).

6

A similar argument was rejected by the Sixth Circuit in *Yarberry v. Gregg Appliances, Inc.*, 625 F. App'x 729 (6th Cir. 2015). In *Yarberry*, the Sixth Circuit pointed to its own precedent, which held that "an employer may legitimately fire an employee for conduct, even conduct that occurs as a result of a disability, if that conduct disqualifies the employee from his or her job." *Yarberry*, 625 F. App'x at 739 (quoting *Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 366 (6th Cir. 2007), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012)). Accordingly, the Sixth Circuit held that a plaintiff may "not rely on his disability and request an accommodation *after* engaging in terminable misconduct." *Id.* (emphasis added).

In the education context, courts have explicitly held that "the ADA and the [RHA] permit [a school] to discipline a student even if the student's misconduct is the result of disability." *Tylicki v. St. Onge*, 297 F. App'x 65, 67 (2d Cir. 2008); *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 465 (4th Cir. 2012) ("'[M]isconduct—even misconduct related to a disability—is not itself a disability' and may be a basis for dismissal." (citation omitted)). As the Fourth Circuit noted in *Halpern*:

> A school, if informed that a student has a disability with behavioral manifestations, may be obligated to make accommodations to help the student avoid engaging in misconduct. But, the law does not require the school to ignore misconduct that has occurred because the student subsequently asserts it was the result of a disability.

*Halpern*, 669 F.3d at 465.

Thus, Bellarmine may discipline Russell for his misconduct, even if his disability contributed to that misconduct. Yet, the only accommodation that Russell requests is lessened sanctions.[3] (Pl.'s Resp. Def.'s Mot. Summ. J. 14). When considering the reasonableness of an

---

[3] Russell argues that "the alteration of existing policies and rules can be a reasonable accommodation for an individual with [Tourette Syndrome] . . . ." (Pl.'s Resp. Def.'s Mot. Summ.

7

"accommodation that would have . . . provided special leniency for the academic strike earned as a result of [a] [failing grade,]" the Sixth Circuit stated that a "request for such retroactive accommodation likely would not have even been reasonable." *DeAngelo v. Vanderbilt Univ.*, 821 F. App'x 471, 482 (6th Cir. 2020) (citations omitted). Indeed, Russell seeks not a disability accommodation but a "second chance to better control [his] treatable medical condition." *Id.* (alteration in original) (quoting *Hill v. Kan. City Area Transp. Auth.*, 181 F.3d 891, 894 (8th Cir. 1999)). This is not reasonable—Russell argues that Bellarmine should ignore his misconduct because it was the result of his disability, but the law does not compel Bellarmine to do so. *See Ray v. Kroger Co.*, 264 F. Supp. 2d 1221, 1229 (S.D. Ga.), *aff'd*, 90 F. App'x 384 (11th Cir. 2003) "Because [the plaintiff] was unable to perform his duties as a clerk without blurting out offensive

---

J. 19). In support of that proposition, he cites *Muse v. Home Depot USA, Inc.*, No. CV04-00154 DAE BMK, 2006 WL 8436438, at *7 (D. Haw. Nov. 7, 2006). In that case, a man with Tourette Syndrome was asked to leave Home Depot after he used profanities while talking to an employee. He filed suit under the ADA and requested that Home Depot modify its "policy of refusing service to customers who use profane language to Home Depot employees" and "suggested that he be able to shop at Home Depot either by himself, or with a sign posted that a person with Tourette's is currently shopping, or using a chaperone." *Id.* Home Depot argued that "this request is unreasonable because it would require substantial modification by requiring Home Depot to disregard its core values of prohibiting sexist and vulgar remarks, and would possibly subject Home Depot to liability for sexual or criminal harassment." *Id.* The court denied Home Depot's motion for summary judgment, stating:

> This Court cannot hold as a matter of law that [the plaintiff's] request is unreasonable. This is not a situation where the profanities used are directed at a specific person and are intentional. Instead, [the plaintiff] has presented evidence that he has Tourette's syndrome, which causes him to make these remarks involuntarily and that he does not mean them. Thus, there is no evidence that [the plaintiff] is intentionally violating Home Depot's core values.

*Id.* As Bellarmine notes, "*Muse* does not appear to have been cited for the points relied upon by Russell at any point over the last nineteen years by any court, not even those in the Ninth Circuit." (Def.'s Reply Mot. Summ. J. 7 n.6). In any event, this unreported district court case is distinguishable from this matter because the only accommodation Russell identified was lessened sanctions—he failed to identify any accommodations that would help him avoid directing offensive remarks at other students in the future. (Pl.'s Resp. Def.'s Mot. Summ. J. 14).

8

words in front of Kroger' customers, the Court finds that [the plaintiff] was not otherwise qualified for his job. . . . Even though [the plaintiff's] constant blurting out of vulgar language and racial slurs was caused by [the plaintiff's] Tourette's Syndrome, Kroger had a legitimate basis for terminating his employment."). Accordingly, Russell is not "otherwise qualified" because he has not identified a reasonable accommodation that would have allowed him to remain in Bellarmine student housing.

Thus, Bellarmine is entitled to summary judgment as to this claim. Because this claim necessarily fails, the Court need not analyze the final element.

### C. KCRA Claim

Under the KCRA, "it is an unlawful practice for a person to deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation, resort, or amusement, as defined in KRS 344.130, on the ground of disability . . . ." KRS 344.120. Russell alleges that Bellarmine "violated the KCRA's prohibition of disability discrimination in places of public accommodation." (Am. Compl. ¶ 60).[4]

Bellarmine responds to Russell's claim using the standard for indirect evidence of disability discrimination:

> To state a *prima facie* claim of discrimination under KRS 344.120, the plaintiff must allege facts that demonstrate:
>     (1)    [he] is a member of a protected class;
>     (2)    [he] sought to make or enforce a contract for services ordinarily provided by the defendant; and
>     (3)    [he] was denied the right to enter into or enjoy the benefits or privileges of the contractual relationship in that
>         (a)    [he] was deprived of services while similarly situated persons outside the protected class were not[;] and/or

---

[4] The Court assumes Bellarmine is a place of public accommodation for the purpose of ruling on Defendant's summary judgment motion.

9

> (b) [he] received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory.

*Willis v. 8UP Elevated Drinkery & Kitchen*, No. 3:23-CV-00295-GNS, 2024 WL 1182881, at *3 (W.D. Ky. Mar. 18, 2024) (fifth alteration in original) (citation omitted); (Def.'s Mot. Summ. J. 17).[5] Because Russell alleges that he was deprived of services, he must show that "similarly situated persons outside the protected class were not" deprived. *Willis*, 2024 WL 1182881, at *3. Russell, however, does not identify any similarly situated comparator and even implies that he was treated exactly like a non-disabled person would have been treated. (Russell Dep. 106:9-18; *see* Pl.'s Resp. Def.'s Mot. Summ. J.). Thus, Russell fails to support his claim with circumstantial evidence.

Still, Russell's claim could be construed as being based on direct evidence because his primary argument is that Bellarmine failed to accommodate his disability. (Pl.'s Resp. Def.'s Mot. Summ. J. 31); *Banks v. Bosch Rexroth Corp.*, 610 F. App'x 519, 526 (6th Cir. 2015) ("[C]laims premised upon an employer's failure to offer a reasonable accommodation necessarily involve direct evidence (the failure to accommodate) of discrimination." (quoting *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007))). To proceed on a claim based on direct evidence, "a plaintiff must demonstrate: (1) that he has a disability as defined by the [KCRA]; (2) that he is otherwise qualified to perform the essential functions of the [program], with or without reasonable accommodation; and (3) that he suffered an adverse . . . action because of the disability." *Hawkins*

---

[5] Russell agrees with the first two elements but formulates the remaining elements differently, supporting his assertion with a citation to an inapplicable portion of *Willis*. (Pl.'s Resp. Def.'s Mot. Summ. J. 29 (citation omitted)). The Court interprets Russell's third and fourth element as a more general articulation of the third element stated by this Court in *Willis*.

*v. Bd. of Educ. of Scott Cnty.*, 716 S.W.3d 1, 6 (Ky. App. 2025) (citation omitted). This is the same standard used for ADA and RHA claims. *See, e.g., S.S.*, 532 F.3d at 453.

Naturally, this claim fails for the same reasons as Russell's RHA claim—Russell has not shown that he was otherwise qualified to remain in student housing. *Banks v. Bosch Rexroth Corp.*, 15 F. Supp. 3d 681, 690 (E.D. Ky. 2014), *aff'd*, 610 F. App'x 519 (6th Cir. 2015) ("Therefore, [the plaintiff] has not demonstrated that she offered a reasonable accommodation as required for these KCRA claims."); *Laferty v. United Parcel Serv., Inc.*, 186 F. Supp. 3d 702, 708 (W.D. Ky. 2016) ("Here, [the plaintiff] brings a failure-to-accommodate claim. . . . To make out the corresponding *prima facie* case, then, [the plaintiff] must show that he is disabled and otherwise qualified for the position despite his disability without accommodation . . . , with an alleged 'essential' job requirement eliminated, or with a proposed reasonable accommodation." (internal footnote omitted) (citations omitted)). Because this claim necessarily fails, the Court need not analyze the remaining elements, and Bellarmine is entitled to summary judgment on this claim.

## V.  CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (DN 25) is **GRANTED**, and Plaintiff's claims are **DISMISSED WITH PREJUDICE**. The Clerk shall strike this matter from the active docket.

**Greg N. Stivers, Judge**
**United States District Court**
February 24, 2026

cc:  counsel of record